UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

JAMES DOBSON

    v.                                C.A. No.:

CITY OF FRAMINGHAM and
FRAMINGHAM PUBLIC SCHOOLS

## COMPLAINT

### Jurisdiction and Venue

1. Jurisdiction over this matter exists pursuant to 28 U.S.C. §1331 because these plaintiffs seek redress under federal law. To wit, these are claims brought pursuant to 28.U.S.C. 2000(e) and 2000(e)-3, also known as Title VII of the Civil Rights Act of 1964; this Court has pendant jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

2. The proper venue for this civil action is the United States District Court of Massachusetts pursuant to 28 U.S.C. §1391 because all acts and omissions giving rise to the cause of action occurred in or around the Framingham, Massachusetts.

### Facts

3. James Dobson is an individual who resides in Pawtucket, Rhode Island. He was, at all times, relevant to this Charge of Discrimination, an employee of the defendants as defined by Massachusetts General Laws c. 151B and 42 U.S.C. §2000(e); also known as Title VII of the Civil Rights Act of 1964.

4. The Framingham Public Schools is a division of the municipality, the City of Framingham. This entity was, at all times relevant to this complaint, the plaintiff's employer.

5.     The City of Framingham is a municipality existing within the Commonwealth of Massachusetts. This entity was, at all times relevant to this complaint, the plaintiff's employer.

6.     Plaintiff, James Dobson, is a black male born in Liberia.

7.     Plaintiff was hired by the City of Framingham to work for the Framingham Public Schools in the transportation department as the Acting Assistant Director of Transportation.

8.     Plaintiff was hired on or about October 15, 2018.

9.     Beginning on his initial day of employment, plaintiff was racially harassed by one Sam Smith, another employee of the defendants.

10.    Sam Smith initially made repeated statements that "this black guy wants to be the boss" in a derogatory fashion and directed at plaintiff.

11.    Plaintiff informed his supervisor, Ms. Patricia Disalle, of Mr. Smith's actions and racially based comments.

12.    Ms. Disalle, an employee of the defendants and plaintiff's supervisor, instructed plaintiff to let Mr. Smith's actions go as that was just the way he was and that she really needed him.

13.    Mr. Smith increased his actions and would grab things out of plaintiff's hands, push plaintiff and swear at plaintiff. These actions were witnessed by other employee(s) of the defendants.

14.    Plaintiff reported all these actions by Mr. Smith to Ms. Patricia Disalle who once again told plaintiff how important Mr. Smith was and that plaintiff should not say anything

to him even though she knew that what Mr. Smith was doing was wrong.

15. The supervisor of a contracting partner of the defendants, Ralph Castagno, was at a place and location wherein the plaintiff was employed by the defendants, trying to explain a memory that he had about his Asian heritage and his grandmother sending him to play the numbers. Before Mr. Castagno could finish, Mr. Smith said in front of plaintiff, "do you mean nigger run."

16. Mr. Smith then told a group of people, including plaintiff, how he brought a black girl home and his father beat him for it, making him never bring a black girl home again.

17. Plaintiff again reported Mr. Smith's actions and statements to Ms. Disalle.

18. Plaintiff's reports of Mr. Smith's discriminatory actions and statements were protected activities as defined by Massachusetts General Laws c. 151B §4 and 42 U.S.C. § 2000e-3.

19. Several days after reporting Mr. Smith's statements, plaintiff was called into Ms. Disalle's office and apprised that the matter had been escalated to human resources.

20. At that time, Ms. Disalle informed plaintiff that nothing was going to happen to Mr. Smith, that at most it will be just a slap on the wrist, that she just wanted plaintiff to be prepared for it. Ms. Disalle again informed plaintiff about how much Mr. Smith was needed and that she would be left to do extra work and come in early if Mr. Smith was to be fired.

21. Mr. Smith was fired after an investigation found that Mr. Smith's actions violative of the defendant's antidiscrimination policies.

22. Following Mr. Smith's termination, Ms. Disalle' attitude towards plaintiff immediately became short and was continually agitated with plaintiff.

23. A week or so after Mr. Smith's termination, Ms. Disalle stated to plaintiff that she

has been short with plaintiff and because she's had to come in early due to Mr. Smith's termination.

24. Ms. Disalle's negative attitude toward plaintiff continued and she apologized to plaintiff a second time.

25. After Mr. Smith was terminated, Ms. Disalle excluded plaintiff from meetings to which plaintiff should have been privy as the assistant director of transportation.

26. After Mr. Smith was terminated, Ms. Disalle withheld information from plaintiff that should have been provided to him due to his position with the defendants.

27. After Mr. Smith was terminated, Ms. Disalle criticized plaintiff's interactions with other employees of the City without reason or basis.

28. Plaintiff, at all times of his employment was a satisfactory employee and was never informed by Ms. Disalle or any other representative of the defendants that he was doing anything other than a satisfactory job and Ms. Disalle would in fact praise plaintiff's work to him.

29. Plaintiff was terminated from his employment with the defendants on January 24, 2019, with the reason given being that the defendants' felt plaintiff was not a good fit; the relationship was not working out.

30. Plaintiff was informed by a representative of the defendants that he was terminated based on the recommendation and statements of Ms. Disalle.

31. Ms. Disalle, plaintiff's direct supervisor, attempted to keep plaintiff from reporting discriminatory actions of a co-worker, stated the negative effect of the co-worker's absence, cautioned plaintiff as to the effects of a potential investigation, immediately treated plaintiff differently when Mr. Smith was terminated, began withholding

information, was critical of plaintiff's actions without reason, suggested plaintiff's termination and then made false statements regarding her involvement.

### Count I
*Discrimination/Retaliation in Violation of*
*Massachusetts General Laws §151B*

32. Plaintiff restates all previous paragraphs by reference as if stated fully herein.

33. The defendants The City of Framingham and the Framingham Public Schools did violate Massachusetts General Laws c. 151B §4 by the facts described herein, by discriminating and retaliating against him with respect to tenure, compensation, terms, conditions or privileges of employment because of his protected activity.

34. As a result, plaintiff has suffered lost wages, emotional distress and has been further damnified and continues to suffer damages.

WHEREFORE, plaintiff prays this Honorable Court award him compensatory and consequential damages and compensatory damages as well as his costs of litigation and reasonable attorneys' fees and such other relief as the Court deems appropriate.

### Count II
*Retaliation in Violation of 42 U.S.C. §2000e-3*
*(Title VII of the Civil Rights Act of 1964)*

35. Plaintiff restates all previous paragraphs by reference as if stated fully herein.

36. The defendants did violate Title VII by the facts described herein, by discriminating against and retaliating against him because he opposed a practice forbidden by Title VII and/or because he has made a charge, testified, or assisted in any manner in any investigation, proceeding, or hearing under the law.

37.     As a result, plaintiff has suffered lost wages, emotional distress and has been further damnified and continues to suffer damages.

WHEREFORE, plaintiff respectfully requests this Honorable Court award her compensatory damages and all other damages authorized by statute, as well as her costs of litigation and reasonable attorneys' fees pursuant to statute.

### Prayer for Relief and Demand for Trial by Jury

Wherefore, your plaintiff prays that this honorable Court:

a.      Enter judgment in his favor on all counts against the defendants;

b.      Award him with actual damages and damages for emotional distress;

c.      Award him any and all forms of damages available by statute;

d.      Award any other relief whether or not equitable in nature that this Court deems fair and just;

e.      *__The plaintiff further requests and demand a trial by jury for all claims so triable__.*

                                            Respectfully submitted,
                                            JAMES DOBSON
                                            By and through his attorney,

                                            /s/ David S. Cass
                                            David S. Cass, #561156
                                            One Davol Square, 4th Floor
                                            Providence, RI 02903
                                            (508) 889-2674
                                            Fax: (401) 272-2708
                                            david@davidcasslaw.com